**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

SANJIV H. NEAL, Plaintiff,

V.

CITY OF INDIANAPOLIS; INDIANAPOLIS FIRE DEPT.;
ERNEST MALONE, individually and in his official capacity;
THOMAS H. MILLER, individually and in his official capacity
TODD WILSON, individually and in his official capacity,
TIMOTHY ROBINSON, individually and in his official capacity,
HANK HARRIS, individually and in his official and personal
capacity, John/Jane Does 1-10, Defendants.

CASE NO.

1:26-cv-1513-RLY-TAB

**FILED**

**07/20/2026**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

## COMPLAINT FOR CIVIL RIGHT VIOLATIONS, DAMAGES AND JURY DEMAND

Plaintiff, Sanjiv H. Neal, for his Complaint against Defendants, alleges as follows:

### I.   NATURE OF THE ACTION

1.   This action arises from the termination of Plaintiff's employment with the Indianapolis Fire Department, the failure to provide required due process and disability-related procedures, the failure to preserve and produce material records, the wrongful classification of Plaintiff as AWOL, and the resulting deprivation of Plaintiff's constitutional, statutory, pension, and disability-related rights.

2.   Plaintiff alleges that Defendants knew he suffered a documented line-of-duty injury and serious mental-health impairment; knew he had undergone treatment and fitness-for-duty evaluation; knew he experienced an acute family trauma shortly before a hearing that "purportedly occurred on" July 24, 2020, and they processed his separation as a discipline case rather than through the disability and medical processes required by law and policy.

3.    Plaintiff further alleges that Defendants concealed material facts, did not disclose or produce key records, relied on inconsistent or post hoc policy materials, and gave misleading guidance concerning appeal and pension rights.

4.    Plaintiff seeks damages, record production, correction of employment records, equitable relief, and all other relief the Court deems just and proper.

## II. JURISDICTION AND VENUE

5.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the United States Constitution and federal law, including 42 U.S.C. § 1983, the Fourteenth and First Amendment, USERRA, Fraudulent Concealment.

6.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims, including claims under Indiana law and the Indiana Access to Public Records Act.

7.    Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Indianapolis, Marion County, Indiana, within this District.

## III. PARTIES

8.    Plaintiff Sanjiv H. Neal is an adult resident of Indiana and a former Indianapolis firefighter.

9.    Defendant City of Indianapolis is a municipal corporation and the employer responsible for the policies, customs, training, supervision, discipline, human-resources administration, and records practices at issue.

10.    Defendant Indianapolis Fire Department is a department and instrumentality of the City of Indianapolis.

11. During the period of events giving rise to this lawsuit, the City and IFD maintained policies, concerning firefighter disability, training, disciplinary actions, including termination, and personnel accountability.

12. Defendant Ernest Malone was Fire Chief during the relevant period and exercised authority over discipline, personnel decisions, medical routing, and enforcement of department practices.

13. Defendant Thomas H. Miller was President of the Indianapolis Civilian Fire Merit Board during the relevant period and signed or ratified the written termination decision.

14. Defendant Todd Wilson was involved in pension, disability, or administrative communications regarding Plaintiff and the 1977 Fund during the relevant time period.

15. Defendant Timothy Robinson was involved in personnel or human-resources administration during the relevant time period.

16. Defendant Hank Harris was President of Indianapolis Professional Firefighters Union Local 416 during the relevant time period.

17. Defendants John/Jane Does 1–10 are presently unknown employees, supervisors, HR personnel, who Plaintiff intends to add to this lawsuit upon learning their identity.

## IV. STATUTORY AND CONSTITUTIONAL BACKGROUND

18. The Fourteenth Amendment requires a meaningful notice and an opportunity to be heard before the deprivation of a protected property interest.

19. Federal law and/or case law tolls the statute of limitations where a disability exists and where a party conceals facts from the person entitled to bring an action.

20. Indiana Code § 36-8-3-4 governs discipline and dismissal of firefighters and requires notice, hearing procedures, findings, and a record.

21.     Indiana Code § 36-8-8 and related provisions govern disability-related processes and pension rights for firefighters in the 1977 Police Officers' and Firefighters' Pension and Disability Fund.

22.     Indiana law tolls limitations where a legal disability exists and where a party conceals material facts from the person entitled to bring an action. (§34-11-61-2)

23.     The Indiana Access to Public Records Act § 5-14-3 requires public agencies to produce responsive records or lawfully deny them with the required specificity.

## V. **FACTUAL ALLEGATIONS**

A.     Employment, Military and Baseline Record

24.     On May 13, 2013, Plaintiff was hired by the Indianapolis Fire Department, as a firefighter.

25.     At that time, Plaintiff became a participant in the Indiana 1977 Police Officers' and Firefighters' Pension and Disability Fund.

26.     Plaintiff made mandatory pension contributions in the 1977 Fund. He has preserved contributions and never withdrew pension funds.

27.     Additionally, Plaintiff was a dues-paying member of Indianapolis Professional Firefighters Union Local 416.

28.     From July 1997 to September 2021, Plaintiff served in the United States military, including the Army Reserve. Plaintiff's military status, employment history, and public-service background were known to Defendants.

B.    Line-of-Duty Injury and Mental-Health Decline

29.    On March 13, 2018, Plaintiff sustained a documented line-of-duty head injury during IFD training and required emergency treatment and continuing medical care. As a result, Plaintiff was removed from full duty and placed on limited duty.

30.    Following the injury, Plaintiff developed significant psychological symptoms, including PTSD, depression, anxiety, sleep disturbance, cognitive impairment, impaired judgment, fear, functional decline. They impaired his ability to function.

31.    On November 20, 2018, Plaintiff underwent fitness for duty (FFD) evaluations through Public Safety Medical as part of the Department's return to work and medical clearance process.

32.    The evaluations generated fitness for duty findings, work status recommendations, and duty restrictions that were communicated through the Department's established medical review process. The results of Plaintiff's November 20, 2018 evaluation deemed him unfit for duty.

33.    Upon information and belief, Kris Harrison, the HR Administrator left the department. In January 2019, Defendant Chief Timothy Robinson was newly placed into the HR Administrator role to administer firefighter discipline, disability routing, notice, records, and separation procedures.

34.    On January 22, 2019, Plaintiff underwent follow-up psychological Fitness-for-Duty evaluation through Public Safety Medical and, again, was rated unfit for duty.

35.    On or about August 2019, Plaintiff sought psychological treatment from Robert L. Smith, Ph.D. because of significant emotional distress arising after the events alleged herein.

36.    Dr. Smith diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood (ICD-10 F43.23),

37.    Defendants received and possessed medical information documenting that Plaintiff had been placed on limited duty and was receiving treatment for depression, anxiety, and related psychological symptoms.

C.    FHE Treatment and Continuing Impairment

38.    On September 30, 2019, Plaintiff entered the First Responders Program at Florida House, now known as FHE Health, in Deerfield Beach, Florida, for inpatient treatment related to his documented PTSD, depression, anxiety, trauma, and other psychological symptoms.

39.    On November 5, 2019, Plaintiff was discharged from FHE Health with a transition plan for continued outpatient mental health treatment with Indiana's Fall Creek Counseling, to begin on November 7, 2019.

40.    Plaintiff's discharge did not constitute a medical release or Fitness-for-Duty clearance determination or authorization to return to unrestricted firefighting duties with the Indianapolis Fire Department

41.    During this period (September 30-November 5, 2019), Plaintiff remained on the Indianapolis Fire Department payroll and continued receiving his regular firefighter salary.

42.    Following Plaintiff's return to Indiana on November 5, Plaintiff remained subject to additional medical and psychological evaluation, including the Department's Fitness-for-Duty process, before he could return to unrestricted firefighting duties.

43.    Plaintiff continued experiencing persistent psychological symptoms, including depression, anxiety, irritability, sleep disturbance, emotional distress, and difficulty functioning in his employment and daily activities.

44.     During Plaintiff's inpatient treatment, Plaintiff communicated primarily with Defendant Chief Doug Abernathy, regarding his treatment and return to duty.

45.     On approximately November 7, 2019, Plaintiff contacted Defendants Chief Abernathy regarding follow-up treatment at Indiana's Fall Creek Counseling. Plaintiff informed Abernathy that a representative at Fall Creek said the inpatient treatment program could not provide the specialized treatment he required and that it primarily served individuals involved in or returning from the criminal justice system.

46.     Plaintiff informed Abernathy that, as a result, Plaintiff was not accepted into the recommended inpatient or aftercare program.

47.     Consequently, Plaintiff became increasingly socially isolated, withdrew from normal activities, and continued experiencing significant PTSD, depression, anxiety, and emotional distress.

48.     Plaintiff was fearful, experienced persistent depression, anxiety, irritability, and difficulty concentrating, and was uncertain whether he would ever be able to safely return to unrestricted duty with the Indianapolis Fire Department.

D.     Disciplinary Routing Instead of Disability Routing

49.     Unbeknownst to Plaintiff, between December 30 and 31, 2019, Defendants IFD classified Plaintiff as absent without leave (AWOL). Plaintiff learned about this classification on or about August 2, 2020.

50.     Plaintiff's AWOL classification was published and is continually published and made public throughout the internet and other mediums, to this day.

51.     Plaintiff's absence was due to his documented PTSD, depression, anxiety, limited-duty status, unresolved medical evaluation, and other psychological issues.

52.    Pursuant to the Public Safety Medical (PSM) evaluation process, Defendants received Plaintiff's medical and psychological fitness for duty evaluation results, including his work restrictions and duty status recommendations, finding him unfit for duty (fitness of duty report).

53.    Based upon the evaluations, Plaintiff remained on limited duty and was not medically cleared to return to unrestricted firefighting duties.

54.    At all times Defendants had knowledge of Plaintiff's line of duty injury, inpatient treatment, and limited-duty status. However, rather than completing the Department's medical management process, pursuant to General Order 6.09, Defendants proceeded with disciplinary action based upon an AWOL classification.

55.    General Order 6.09 required written Fitness-for-Duty findings to be submitted to the Chief of Personnel (Defendants Robinson), reviewed, and forwarded to the Chief of Fire (Defendants Malone) for review and recommendation, before executing disciplinary action.

56.    Defendants did not provide Plaintiff with Fitness-for-Duty reports, written findings, medical recommendations, or supporting documentation generated during the Department's Fitness-for-Duty process before proceeding with disciplinary action.

57.    Defendants did not provide Plaintiff a pre-separation disability hearing, pursuant to policy.

58.    Defendants did not provide clear written notice that a disability hearing had to be requested before separation from covered service.

59.    Unbeknownst to Plaintiff, on January 27, 2020, Defendant Robinson recommended Plaintiff's termination. Plaintiff first learned about the recommendation in October, 2025.

E.    Merit Board, Union Communications, and Discharge Recommendation:

60.    On February 7, 2020, Defendant Chief Malone signed a "Notice of Discharge Recommendation" recommending Plaintiff's termination. Plaintiff first learned about the existence of the Discharge Recommendation on or about October 2025.

61.    On or about February 11 and/or February 14, 2020, Defendant Thomas H. Miller signed hearing notices scheduling a hearing concerning Plaintiff's employment. Plaintiff first learned about the existence of these hearing notices on or about October 2025.

62.    On February 16, 2020, Plaintiff discovered his father, Jerome Neal, deceased at his residence.

63.    Plaintiff contacted emergency services, and four firefighters of IFD Engine 3 responded. Chief Doug Abernathy and Chaplain Malachi Walter responded and arrived at the residence.

64.    After Defendants became aware that Plaintiff had discovered his father deceased, Defendants proceeded with the disciplinary process without obtaining an updated psychological evaluation.

65.    On or about March 28 or 30, 2020, Plaintiff received an email from Defendant Hank Harris, in which Harris stated Plaintiff was terminated effective February 26, 2020 and that a hearing had been scheduled for February 26, 2020.

66.    Plaintiff did not receive the purported March notice of termination, until July 24, 2020.

67.    Consequently, on or about the same time (March 28 through March 30, 2020), Plaintiff contacted Defendant Harris to file a complaint-claim regarding his purported termination.

At the time, he also sought assistance from Harris regarding his termination, appeal rights, disability rights, pension rights, and legal representation.

68. Defendant Harris informed Plaintiff that the Department considered Plaintiff's termination finalized and appeal time had passed.

69. Harris also advised Plaintiff that additional records, including merit Board meeting minutes, were needed before counsel could fully evaluate Plaintiff's complaint-claims.

70. Harris further advised Plaintiff that Public Safety Medical would not release Plaintiff's Fitness-for-Duty records because the IFD had denied the request and that without IFD's permission, Plaintiff would need to subpoena those records.

71. On April 22, 2020, the city protested Plaintiff's unemployment application.

72. Additionally, the city told the Indiana Department of Workforce Development that Plaintiff was discharged for cause.

73. On July 24, 2020, Defendants issued a written Merit Board decision stating Plaintiff violated General Order 2.08 and his discharge was effective February 26, 2020.

74. General Order 2.08 refers to the Indianapolis Fire Department (IFD) attendance and absence policy. It mandates that firefighters who will be late or absent for duty must notify a superior officer prior to the start of their shift or period of absence

75. Plaintiff did not receive the decision nor any contemporaneous written findings of fact. Plaintiff first learned of the Merit Board's decision on August 2, 2020.

76.    During communications with Defendant Harris, Plaintiff sought clarification regarding whether his termination had become final, the applicable appeal deadlines, and the procedures for obtaining legal representation, hearing records, and pension information.

77.    At all times Plaintiff reasonably relied on Defendant Harris's communications, to obtain records necessary to understand and challenge his termination.

F.    Indiana Public Retirement System (IPRS)

78.    In September 2025, Plaintiff contacted IPRS to initiate process to receive his pension. IPRS instructed Plaintiff to contact his employer IFD.

79.    On September 4, 2025, Plaintiff inquired with Defendant, Todd Wilson. On September 9, 2025, Defendants Todd Wilson informed Plaintiff that: You must request a hearing with your local board before separating from covered service."

80.    Wilson further stated: "You are not an active member of the Indianapolis Fire Department nor have been since February of 2020."

G.    General Orders, APRA Requests

81.    On October 2025, Plaintiff sought IFD/Indianapolis historical versions of General Orders (for January 1, 2014 through February 26, 2020).

82.    Plaintiff specifically requested the General Orders 2.08 governing AWOL, discipline, and termination, including revision histories.

83.    Plaintiff also requested employment, FFD, discipline, and pension records.

84.    On October 6, 2025, Plaintiff submitted an APRA (Access to Public Records Act) request seeking employment, FFD, discipline, pension, and related records.

85.    On December 9, 2025, Plaintiff submitted a request for historical General Orders and revision histories.

86.    On October 9, 2025, the City acknowledged receipt of the APRA request and assigned tracking number P054711-100925.

87.    On March 2, 2026, Plaintiff filed a Public Access Counselor complaint, regarding the City's failure to produce records, Case No. 25-FC-365

88.    Defendants IFD, Chief Malone, White and Robinson did not provide the documents and information Plaintiff requested and that should have been produced earlier

H.    Continuing Harm

89.    Plaintiff suffered lost wages, benefits, pension-related harm, injury to reputation, emotional distress, and loss of career opportunities, and they are continuing, today.

90.    Plaintiff remains under mental-health treatment and continues take medication.

91.    Plaintiff continues to seek correction of his record and access to the disability and pension process that should have been provided earlier.

92.    Plaintiff's PTSD, depression, anxiety, sleep disturbance, cognitive impairment, impaired judgment, fear, and functional decline continue today.

93.    Plaintiff continues treatment with Dr. Higginbotham and continues to take prescribed psychiatric medication.

## FEDERAL CAUSES OF ACTION

### Count I
### Due Process Violation Under 42 U.S.C. § 1983
### (Against All Defendants)

94.    Plaintiff realleges paragraphs 1 through 92 as if specifically plead here.

95.    Pursuant to the Fourteenth Amendment, the government is prohibited from taking an individual liberty, property and life without due process. At all times relevant hereto,

Defendants acted under color of state law to deprive Plaintiff of his constitutionally protected liberty, property, life interests without due process of law.

96. As more specifically alleged in paragraphs 49-50, 54-60, 64-72, and 75-89, Defendants failed to provide Plaintiff with adequate and meaningful notice and a meaningful opportunity to be heard before terminating Plaintiff's protected property interest in continued employment (including access to firefighter disciplinary procedures, access to evidence, or a complete record), his pension right, and his right to pursue a livelihood.

97. Further, Defendants perceived Plaintiff as disabled and retaliated against him based on that perception and because Plaintiff filed a complaint regarding the termination notice. Plaintiff lost related rights, such as his income and pension.

98. The acts, omissions, policies, and customs of Defendant City, IFD and individual Defendants constituted deliberate indifference to the constitutional rights of the Plaintiff, directly and proximately causing the emotional, physical injuries and deprivation of liberty described herein.

## Count II
### Fraudulent Concealment/Equitable Tolling
### (Against All Defendants)

99. Plaintiff realleges paragraphs 1 through 92 as if specifically plead here.

100. Pursuant to the Fourteenth Amendment, the government is prohibited from taking an individual liberty, property and life without due process. At all times relevant hereto, Defendants acted under color of state law to deprive Plaintiff of his constitutionally protected liberty, property, life interests without due process of law.

101. As more specifically alleged in paragraphs 49-50, 54-60, 64-72, and 75-89 Defendants took active-affirmative steps to hide the facts underlying Plaintiff's 1983 claim.

102. They engaged in a course of conduct designed to conceal evidence of wrongdoing.

103. Plaintiff failed to discover the operative facts of the claim within the statutory period.

104. Although Plaintiff pursued his rights diligently, he did not discover the operative facts of the claim within the statutory period, and his failure to file was excused by external, extraordinary circumstances despite his own diligence.

105. The acts, omissions, policies, and customs of Defendant City, IFD and individual Defendants constituted deliberate indifference to the constitutional rights of the Plaintiff, directly and proximately causing the physical injuries and deprivation of liberty described herein."

## Count III
## USERRA RETALIAITON
### (Against All Defendants)

106. Plaintiff realleges paragraphs 1 through 92 as if specifically plead herein.

107. Pursuant to 38 U.S.C. § 4311, employers are prohibited from employment discrimination and retaliation based on military service.

108. As more specifically alleged in paragraphs 49-50, 54-60, 64-72, and 75-89 evidence shows Defendants collectively retaliated against Plaintiff because he advocated to get treatment for himself.

109. At the time of these events, Plaintiff had served in the United States military for approximately twenty-four years.

110. Defendants knew of Plaintiff's military service and obligations.

111. Plaintiff's military status and service were a motivating factor in Defendants' adverse treatment, or at minimum interfered with Plaintiff's protected rights under USERRA.

112. Defendants cannot show they would have taken the same action absent Plaintiff's military status.

## STATE CLAIMS FOR RELIEF

### Count IV
### APRA Violation
### (Against All Defendants)

113. Plaintiff realleges paragraphs 1 through 92 as if specifically plead herein.

114. Pursuant to Indiana Code IC 5-14-3-3, any person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in section 4 of this chapter

115. As more specifically alleged in paragraphs 49-50, 54-60, 64-72, and 75-89 evidence shows Defendants collectively denied Plaintiff that right and failed to produce records requested under APRA.

116. Defendants failed to timely deny records with the required specificity.

117. Defendants' conduct was a constructive denial and concealed material facts.

### Count V
### Defamation
### (Against All Defendants)

118. Plaintiff realleges paragraphs 1 through 92 as if specifically plead herein.

119. The actions of Defendants as more specifically alleged in paragraphs 49-50, 54-60, 4-72, and 75-89 defamed Plaintiff's character. Defendants' statement and writing that Plaintiff went AWOL lowered his worth in the community.

120. The statement and writing were intentionally and/or negligently communicated to a third party who is not the Plaintiff.

121.    The statement was made with a requisite degree of fault, knowing the statement was false or acting with reckless disregard for the truth.

122.    Actual harm or injury to the Plaintiff's reputation was and is caused by the on-going publication of the statement.

### Count VI
### Emotional Distress
### (Against All Defendants)

123.    Plaintiff realleges paragraphs 1 through 92 as if specifically plead herein.

124.    As more specifically alleged in paragraphs 49-50, 54-60, 64-72, and 75-89 evidence shows Defendants' actions caused Plaintiff great and painstaking emotional distress.

125.    Defendants acted with the intent to cause severe emotional distress or did so with reckless disregard for whether such distress would result, resulting in the proximate cause of Plaintiff's emotional distress.

126.    Plaintiff suffered lost wages, lost benefits, lost pension-related rights, lost seniority, lost career trajectory, loss of reputation, emotional distress, and continued mental anguish.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Award compensatory damages;

B. Award punitive damages against individual Defendants where permitted by law;

C. Award back pay, front pay, and pension-equivalent relief;

D. Order reinstatement if feasible;

E.  If reinstatement is impracticable, Plaintiff seeks front pay, pension-equivalent relief, and all equitable relief necessary to make him whole.

F.  Alternatively award equitable relief if reinstatement is impracticable;

G. Order correction of Plaintiff's employment records, including removal or modification of unsupported AWOL findings;

H. Order production of all responsive records, including historical General Orders, FFD records, hearing records, pension-routing records, and communications;

I. Award costs, fees, and interest where allowed;

J. Grant tolling and adverse-inference relief as appropriate; and

K. Grant all other relief the Court deems just and proper.

Plaintiff demands trial by jury on all issues so triable.

> *This complaint was prepared with the assistance of counsel: Lucinda Jones, Michigan Bar No. P81484, who intends to formally enter an appearance as attorney of record for the Plaintiff by filing a Motion for Admission Pro Hac Vice immediately upon the opening of this case docket.*

Respectfully submitted this 20th day of July, 2026.

Sanjiv H. Neal, Pro Se

14075 Farmstead Dr
Fishers IN 46040
sanjivn78@gmail.com
317-529-7905